COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  |  |
|---|---|
| § | No. 08-14-00155-CR |
| § | Appeal from |
| EX PARTE: JESUS GARCIA. § | 120th District Court |
| § | of El Paso County, Texas |
| § | (TC # 2013DCV1647) |

## O P I N I O N

This is an appeal from a post-conviction application for habeas corpus pursuant to Chapter 11 of the Texas Code of Criminal Procedure. TEX.CODE CRIM.PROC.ANN. art. 11.09 (West 2015). Jesus Garcia contends that he was denied the effective assistance of counsel during his DIMS court session with his appointed attorney, Bruce Ponder, thereby rendering his conviction for possession of marijuana, less than two ounces, void.[1] For the reasons that follow, we affirm.

## FACTUAL SUMMARY

On March 31, 2011, Appellant appeared with counsel and entered a guilty plea to the charge of Possession of Marijuana, less than two ounces. The trial court sentenced Appellant to

---

[1] The parties did not specify what "DIMS" stood for in their briefs or in any of the trial court hearings. However, this court has previously identified "DIMS" as "District Attorney's Information Management System." *See In re State*, 162 S.W.3d 672, 675 (Tex.App.--El Paso 2005)(orig. proceeding); *see also Terrell v. City of El Paso*, 481 F.Supp.2d 757, 761 (W.D. Tex. 2007)("DIMS has been described as a 24-hour screening process whereby the El Paso District Attorney's office reviews the facts of an arrest with information from arresting officers and then makes a real-time decision whether to accept or decline a case.").

five days' confinement in the El Paso County Jail in accordance with the parties' agreement. On April 24, 2013, Appellant filed a petition for writ of habeas corpus. In his petition, he argued that the DIMS procedures employed by El Paso County amounted to either ineffective assistance of counsel or the equivalent of no counsel at all. Appellant also alleged that the DIMS proceedings violated various State and U.S. Constitutional rights and that such alleged constitutional violations rendered his guilty plea involuntary.

On May 13, 2013, October 4, 2013, November 6, 2013, November 8, 2013, and November 15, 2013, the trial court conducted the writ hearing. It heard testimony from several witnesses, including Bruce Ponder, Appellant, and the Honorable James Carter, the Criminal Law Magistrate presiding over Appellant's plea.

Ponder described the DIMS court sessions as a "jail reduction program" specifically for someone who had been in custody for 24-48 hours and was not yet able to post bond. The "main goal [of the DIMS court sessions was to get the defendants] out of jail on bond." Ponder further described DIMS as a screening process in which defendants are provided an opportunity to plead not guilty, contact family members, and request a bond hearing. Usually anywhere from ten to twenty defendants are brought into the courtroom for the DIMS court sessions, but Ponder testified that he always counseled each defendant individually. Ponder also indicated that he never counseled more than ten defendants on any particular day. Ponder would review the District Attorney's file on each case prior to meeting with each defendant. These files typically contained arrest information, the complaint, the arresting officer's report, any witness statements, and the State's recommendation for a plea agreement. Ponder testified that his default recommendation was always, "I recommend to you that you plead not guilty today . . . ." He

2

testified that he counseled defendants about the consequences of entering a guilty plea, because he was trying to "talk them out of pleading guilty."

Ponder did not specifically recall the details regarding Garcia's DIMS session, but denied that he counseled or insisted that Appellant plead guilty. When asked about Appellant's allegation that there is no meaningful representation by appointed counsel in negotiating with the District Attorney's office during a DIMS court session, Ponder responded:

> I don't agree with [that statement] . . . [DIMS] is not meant to be any kind of a substitute for . . . the full procedure in a criminal case. It's . . . simply an opportunity for those who are time-served, and under the circumstances, want to plead guilty, to plead guilty and get out of jail; and an opportunity for those who plead not guilty to make bail -- try to make bail.

Appellant then testified. He identified Ponder as the attorney appointed to him for his DIMS court session. Appellant testified that Ponder advised him "that [he] could plead guilty or not guilty; and that if [he] pled guilty, they were going to give [him] five -- [he] was going to have to spend five days there, but that [he] was going to get credit for time [he] had served." Appellant then testified that Ponder did not discuss with him the circumstances of his arrest or advise him of the consequences of a guilty plea. He also claimed that he was under the impression that his trial would occur that same day if he pled guilty. Appellant denied that Ponder recommended to him that he plead not guilty. However, he did concede that Ponder counseled him and the other defendants individually and separately.

On cross-examination, Appellant testified that he had a previous DWI conviction in which he appeared in court, was represented by counsel, and was informed of the charges against him. Appellant admitted that he failed to provide Ponder with the details of his arrest during their DIMS meeting. He acknowledged that he read, signed, and understood all of the warnings and admonishments he was given regarding his guilty plea, including his right to an attorney;

3

right to trial before a jury; the waiver of both his appearance and confrontation rights; and the charge against him and the maximum penalty his charge carried. Finally, the district attorney asked Appellant if he had read and understood the written paragraph that he was freely and voluntarily pleading guilty in open court to the charges in the information, without any coercion, and that he was pleading guilty because he was guilty, to which Appellant answered yes. Finally, Appellant admitted that no one pressured him into pleading guilty for the present marijuana charge.

James Carter then testified. Judge Carter was the Criminal Law Magistrate who presided over Appellant's DIMS court session. Judge Carter also did not specifically recall Appellant's DIMS proceeding. He testified that the DIMS session attorneys did not "address rights or any tactical decisions or dispositions of decisions with multiple defendants at a time," but that the defendants were always counseled individually. According to Judge Carter's personal log that he kept for his cases, probable cause existed in Appellant's case; Appellant received all required warnings and admonishments; and he pled guilty.

The trial court held that Appellant failed to show that Ponder provided ineffective assistance of counsel. The court expressly found Appellant's testimony to be not credible. Specifically, the court rejected Appellant's claims that he did not understand what was occurring during the DIMS court session. It found Appellant's claims to be controverted by his own admissions that he understood the charge against him, his options to plead guilty or not guilty, to post bail, and to have a trial. The court concluded that Ponder's conduct fell within the range of reasonable professional assistance and that Appellant disregarded Ponder's advice. The court confirmed that Appellant received all admonishments and warnings required by the federal and

4

state constitutions and applicable statutory provisions. The court also concluded that the design of the DIMS court sessions did not render counsel ineffective or deficient.

## STANDARD OF REVIEW

We review a trial court's decision to grant or deny relief on a writ of habeas corpus in the light most favorable to the trial judge's ruling and uphold it absent an abuse of discretion. *See Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex.Crim.App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex.Crim.App. 2007). The trial judge, as fact finder at a habeas hearing, is the exclusive judge of witness credibility. *Ex parte Mowbray*, 943 S.W.2d 461, 465 (Tex.Crim.App. 1996). We afford almost total deference to a trial court's findings of historical fact that are supported by the record, and to mixed questions of law and fact that turn on an assessment of a witnesses' credibility or demeanor. *Ex parte Peterson*, 117 S.W.3d at 819; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). On the other hand, we review *de novo* a trial court's determinations of legal questions and its application of the law to facts that do not turn on a determination of witness credibility and demeanor. *Ex parte Martin*, 6 S.W.3d 524, 526 (Tex.Crim.App. 1999).

Where, as here, the trial court makes express findings of fact, we must first determine whether the evidence, when viewed in light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). However, we review a trial court's legal ruling *de novo*. *State v. Iduarte*, 268 S.W.3d 544, 548 (Tex.Crim.App. 2008). "We uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case." *Id.*; *see also State v. Stevens*, 235 S.W.3d 736, 740 (Tex.Crim.App. 2007); *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

**INVOLUNTARINESS OF PLEA**
**DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL**

Appellant raises two issues on appeal: (1) whether he was denied the effective assistance of counsel and (2) whether Appellant was denied counsel. We interpret his brief, however, to solely argue that he was denied the effective assistance of counsel.

To be constitutionally valid, a guilty plea must be entered voluntarily, knowingly, and intelligently. *See Fuller v. State*, 253 S.W.3d 220, 229 (Tex.Crim.App. 2008). A defendant's conviction after a plea of guilty normally rests on his own admission in open court that he committed that with which he is charged. *McMann v. Richardson*, 397 U.S. 759, 766, 90 S.Ct. 1441, 1446, 25 L.Ed.2d 763 (1970). A plea of guilty may not be compelled. *Id.*

A record that indicates that the trial court properly admonished the defendant presents a *prima facie* showing that the guilty plea was made voluntarily and knowingly. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex.Crim.App. 1998). When the record presents a *prima facie* showing that the plea was voluntary and knowing, the burden shifts to the defendant to show that he entered the plea without understanding the consequences. *Edwards v. State*, 921 S.W.2d 477, 479 (Tex.App.--Houston [1st Dist.] 1996, no pet.). An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary. *See Labib v. State*, 239 S.W.3d 322, 332 (Tex.App.--Houston [1st Dist.] 2007, no pet.); *Arreola v. State*, 207 S.W.3d 387, 391 (Tex.App.--Houston [1st Dist.] 2006, no pet.). However, a guilty plea is not voluntary if it was made as a result of ineffective assistance of counsel. *Ex parte Moussazadeh*, 361 S.W.3d 684, 689 (Tex.Crim.App. 2012); *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex.Crim.App. 1980).

A writ applicant seeking habeas relief on the basis of ineffective assistance of counsel must prove by a preponderance of evidence that: (1) counsel's performance was deficient and

6

(2) that he was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App. 1986).

In the context of an involuntary guilty plea resulting from the ineffective assistance of counsel, an appellant must establish prejudice. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). He must demonstrate that there is a reasonable probability that, but for his plea counsel's deficient representation, he would not have pleaded guilty, but would have instead insisted on going to trial. *Id.*

We have already rejected Appellant's argument in *Shipley v. State*, 828 S.W.2d 475, 478-79 (Tex.App.--El Paso 1992, pet ref'd). The defendant in *Shipley* similarly argued that his "jail plea" was involuntary because he only received *pro forma* representation which amounted to the equivalent of no legal assistance at all. *Id.* at 478. In *Shipley*, the relevant facts were as follows:

> Appellant's counsel was appointed to represent Appellant and numerous other similarly-situated inmates. The inmates were brought to the courtroom in a group where appointed counsel advised them that they had the opportunity to plead guilty and be released on that day pursuant to a standard procedure in which the trial court would impose punishment limited to the time served. Counsel simultaneously informed the group that they had been charged with various misdemeanors which ranged in punishment up to one year imprisonment. He also informed them that they were presumed innocent and of: (1) their right to either a jury or nonjury trial; (2) their right to prepare for trial; and (3) their right to confront adversarial witnesses. Counsel also instructed the inmates that if they were not guilty, they should not plead guilty.

*Id.* at 478-79. We went on to explain that "[a]t this early stage of the proceedings, counsel's assistance is best characterized as 'informing' the defendants of their various rights and of the options of either: (1) pleading guilty in exchange for a sentence comporting with the amount of time served; (2) possibly obtaining a lower bond for release awaiting trial; or (3) if a lesser bond is either denied or cannot be met, awaiting trial in jail." *Id*. at 479. Ultimately, we held that the

7

defendant in *Shipley* was adequately apprised of his rights and options from which he intelligently chose to plead guilty. *Id.* at 480. We additionally held that the group counseling format that occurred in *Shipley* was constitutional and that a guilty plea under such circumstances constituted a voluntary plea. *Id.*

Here, Appellant claims he received ineffective assistance of counsel during his DIMS court session and that as a result, his guilty plea was involuntary. We disagree.

The accused has the ultimate authority to make certain fundamental decisions regarding [his] case. *See Ex parte Mines*, 26 S.W.3d 910, 915 n.27 (Tex.Crim.App. 2000), *quoting Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)(citations omitted). These decisions include whether to plead guilty, waive a jury, testify on his or her own behalf, or appeal. *Id.* Ultimately, the decision to plead guilty belonged solely to Appellant. We conclude that the record presents a *prima facie* showing that Appellant made a knowing and voluntary guilty plea. Moreover, the trial court found Appellant's testimony to be not credible, and expressly rejected any claims he made regarding his lack of understanding as to what was occurring during the DIMS session. It further found that Appellant's testimony was controverted by his own admissions that he understood the charge against him, his options to plead guilty or not guilty, to post bail, and to have a trial.

Finding that the record illustrates Appellant was afforded ample information from which he could make an informed and voluntary decision to plead guilty, we agree with the trial court that Ponder provided more than a mere *pro forma* appearance of counsel. The record reflects that Ponder properly advised Appellant to plead not guilty. In fact, Ponder even chose to counsel each of the accused separately and individually, rather than in a group, like the attorney did in *Shipley*. Additionally, Ponder regularly attempted to convince the accused, including Appellant,

to plead not guilty, unlike the attorney in *Shipley*. Ponder customarily advised defendants to plead not guilty so that their cases could be more thoroughly investigated at a later time. Ultimately, the trial court held that Appellant disregarded Ponder's advice and pled guilty with a full understanding of his rights and the consequences of doing so and that the procedures used during the DIMS court sessions did not render counsel ineffective or deficient. For these reasons, Issues One and Two are overruled and the judgment of the court below is affirmed.

December 15, 2015

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)